IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 99-326 |
| | : | |
| ALLEN S. STRATTON | : | |
| a/k/a "Neckbone" | : | |
| | : | |
| | : | |

**MEMORANDUM**

YOHN, J.                                                                                                    February 27, 2012

Currently before me is defendant Allen S. Stratton's motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(2). For the reasons that follow, I will deny his motion.

After a jury trial in which he was convicted of three counts of distribution of cocaine base ("crack") within 1,000 feet of a school and one count of possession with intent to distribute crack within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a), I sentenced Stratton to 240 months of imprisonment on December 1, 2000.[1] Under the applicable Sentencing Guidelines, Stratton's offense level was initially determined to be 32,[2] and he was initially placed in criminal history category IV. But because he qualified as a career offender under U.S.S.G. § 4B1.1, he was assigned an offense level of 37 and a criminal history category of VI, which yielded a

---

[1] I also sentenced him to 8 years of supervised release and imposed a $400 special assessment and a $1,500 fine.

[2] Under the drug quantity table in U.S.S.G. § 2D1.1(c), Stratton's base offense level was 26, which was increased by 2 levels under each of § 2D1.2(a)(1) (conduct near school), § 2D1.1(b)(1) (possession of a firearm), and § 3C1.1 (obstruction of justice).

guideline range of 360 months to life. Finding that application of the career-offender provision overrepresented his criminal history, however, I granted a downward departure under U.S.S.G. § 4A1.3 and decreased his offense level to 34 and his criminal history category to V.[3] This departure resulted in a guideline range of 235 to 293 months, and I sentenced Stratton to 240 months of imprisonment.

On March 17, 2008, after the United States Sentencing Commission retroactively lowered the base offense levels for most crack offenses by two levels,[4] Stratton filed a motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(2). I granted his motion, *see United States v. Stratton*, No. 99-326, 2009 WL 506365 (E.D. Pa. Feb. 26, 2009), and, in an order dated April 20, 2009, reduced his prison sentence to 188 months.

As of November 1, 2011, the Sentencing Commission has again retroactively lowered the offense levels for crack offenses,[5] and Stratton has again filed a motion for a reduction of his

---

[3] In *United States v. Shoupe*, 35 F.3d 835 (3d Cir. 1994), the Third Circuit interpreted the version of § 4A1.3 in effect at the time of Stratton's sentencing as permitting downward departures in both offense level and criminal history category. As a result of a 2003 amendment to the Sentencing Guidelines, however, § 4A1.3 no longer authorizes a court to grant a downward departure in offense level and permits only a one-level downward departure in criminal history. *See United States v. Grier*, 585 F.3d 138 (3d Cir. 2009).

[4] Amendment 706 to the Sentencing Guidelines, which took effect on November 1, 2007, revised the crack quantities in the drug quantity table in § 2D1.1(c) and thereby decreased by two levels the base offense levels for most crack offenses. *See* U.S.S.G. app. C, amend. 706. It was made retroactive as of March 3, 2008. *See id.* app. C, amend. 713.

[5] In accordance with the emergency directive contained in the Fair Sentencing Act of 2010, which act, among other things, increased the threshold amounts of crack that trigger mandatory minimum prison sentences, *see* Pub. L. No. 111-220, 124 Stat. 2372, the Sentencing Commission promulgated Amendment 748, a temporary, emergency amendment that took effect on November 1, 2010, and reduced the base offense levels for crack offenses, *see* U.S.S.G. app. C, amend. 748. Amendment 750 "re-promulgate[d] as permanent the temporary, emergency amendment," *id.* app. C, amend. 750 (reason for amendment), and was made retroactive as of

sentence under § 3582(c)(2). This time, however, another amendment to the Sentencing Guidelines renders Stratton ineligible for such a sentence reduction.

As a general rule, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress has, however, provided an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.* § 3582(c)(2). In that case, a court may "reduce the term of imprisonment . . . *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*" *Id.* (emphasis added). The Third Circuit has interpreted § 3582(c)(2) as granting a district court the discretion to reduce a sentence already imposed where two separate requirements are satisfied: "(1) the defendant's initial sentence must have been 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Flemming*, 617 F.3d 252, 257 (3d Cir. 2010) (quoting 18 U.S.C. § 3582(c)(2)); *see also United States v. Doe*, 564 F.3d 305, 309 (3d Cir. 2009).

In my prior memorandum granting Stratton's first motion for a reduction of his sentence, I concluded that Stratton's prison sentence was based on sentencing guidelines that had subsequently been lowered, *see Stratton*, 2009 WL 506365, at *5–6, and that conclusion remains valid here. Accordingly, Stratton satisfies the first requirement of § 3582(c). But, in light of another amendment to the Sentencing Guidelines that took effect on November 1, 2011, after I granted his first motion, I cannot conclude here that Stratton satisfies the second requirement,

---

November 1, 2011, *see id.* app. C, amend. 759.

namely, that a sentence reduction be consistent with the applicable policy statements issued by the Sentencing Commission.

The applicable policy statement, which is set forth in U.S.S.G. § 1B1.10 and which is binding on courts, *see Dillon v. United States*, 130 S. Ct. 2683 (2010), provides that a sentence reduction resulting from the application of a retroactive amendment to the Sentencing Guidelines is not consistent with the policy statement if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10 (a)(2)(B). Here, the applicable amendment (Amendment 750) revised the crack quantities in the drug quantity table in § 2D1.1(c) and thereby lowered the base offense levels for most crack offenses. But the amendment did not alter the offense levels that apply to career offenders under § 4B1.1(b).

Because Stratton qualified as a career offender but I departed from the career-offender guidelines in sentencing him, the question whether the amendment has the effect of lowering Stratton's applicable guideline range, and thus whether he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2), turns on the definition of "applicable guideline range." That is, the question is whether Stratton's "applicable guideline range" is the sentencing range determined under the career-offender guidelines in § 4B1.1(b) (the "pre-departure range") or whether his "applicable guideline range" is the sentencing range I arrived at after granting a departure from the career-offender guidelines under § 4A1.3 (the "post-departure range").

In *Flemming*, a case decided before the 2011 amendments to the Sentencing Guidelines, the Third Circuit concluded, just as I had when I granted Stratton's first motion for a reduction of his sentence, that the Sentencing Guidelines were ambiguous as to whether the applicable guideline range for a defendant who, like Stratton, qualified as a career offender but was granted

4

a departure under § 4A1.3 was his pre- or post-departure range. *See* 617 F.3d at 260–70 (in light of ambiguity, applying rule of lenity to find defendant eligible for sentence reduction). The other circuits that considered the issue before the 2011 amendments were split. *Compare United States v. Munn*, 595 F.3d 183, 193 (4th Cir. 2010) (concluding that a departure under § 4A1.3 "is a departure *to*, as opposed to a departure *from*, the applicable guideline range"), *and United States v. McGee*, 553 F.3d 225, 227–30 (2d Cir. 2009) (concluding that the policy statement was ambiguous as to whether a defendant's applicable guideline range is his pre-departure range), *with United States v. Pembrook*, 609 F.3d 381, 384–87 (6th Cir. 2010) (holding that a defendant's applicable guideline range is his pre-departure range), *cert. denied*, 131 S. Ct. 1599 (2011), *United States v. Darton*, 595 F.3d 1191, 1194–95 (10th Cir.) (same), *cert. denied*, 130 S. Ct. 3444 (2010), *and United States v. Tolliver*, 570 F.3d 1062, 1065–66 (8th Cir. 2009) (same).

In its 2011 amendment to the policy statement in § 1B1.10, however, the Sentencing Commission expressly addressed the issue and clarified that the "applicable guideline range" is the defendant's pre-departure range. *See* U.S.S.G. app. C, amend. 759 (reason for amendment); *see also id.* § 1.B1.10 cmt. n.1(A). As the Sentencing Commission explained, its amendment to § 1B1.10 "adopts the approach of the Sixth, Eighth, and Tenth Circuits and amends Application Note 1 to clarify that the applicable guideline range referred to in § 1B1.10 is the guideline range determined pursuant to § 1B1.1(a), which is determined *before consideration of any departure provision* in the Guidelines Manual or any variance." *Id.* app. C, amend. 759 (reason for amendment) (emphasis added). Thus, under the applicable policy statement, Stratton's applicable guideline range is the original sentencing range determined under the career-offender guidelines in § 4B1.1(b). Because that range has not been lowered, under the applicable policy statement in

§ 1B1.10, Stratton is not entitled to a reduction in his sentence.

Notwithstanding this new definition of "applicable guideline range" in § 1B1.10, Stratton contends that a court applies § 4A1.3 before determining a defendant's applicable guideline range and thus that he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). He points to two provisions of the Sentencing Guidelines to support his contention.

First, Stratton contends that the new definition in the application notes to § 1B1.10 is inconsistent with the application instructions in § 1B1.1, which, according to him, "compel[] the conclusion that a departure under § 4A1.3 is part of the calculation of the applicable guideline range." (Def.'s Mot. to Reduce Sentence at 6.) Second, Stratton contends that the version of § 4A1.3 that was in effect when he was originally sentenced suggests that a defendant's applicable guideline range is determined after application of § 4A1.3.

But, while the Third Circuit in *Flemming* found such readings of § 1B1.1 and § 4A1.3 plausible, the court ultimately concluded that both provisions were ambiguous as to the step at which § 4A1.3 is applied. *See Flemming*, 617 F.3d at 264–65 (finding Stratton's reading of the application instructions in § 1B1.1 plausible, but asserting that one could also interpret the application instructions as directing courts to make a § 4A1.3 departure after the applicable guideline range has been determined); *id.* at 268–69 (asserting that the language of § 4A1.3 "facially supports the conclusion that a defendant's 'applicable guideline range' is set after a downward departure under § 4A1.3," but ultimately concluding that "the text of . . . § 4A1.3, like the Application Instructions, fails to answer unambiguously whether [a defendant's] 'applicable guideline range' is his pre- or post- § 4A1.3 departure range.").[6]

---

[6] The version of § 4A1.3 that was in effect when Stratton was originally sentenced

In amending § 1B1.10, the Sentencing Commission expressly resolved this ambiguity, clarifying that the applicable guideline range is determined before consideration of any of the departure provisions, including § 4A1.3. *See* U.S.S.G. § 1B1.10 cmt. n.1(A) (explaining that the applicable guideline range is the "range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of *any* departure provision in the Guidelines Manual or any variance" (emphasis added)); *see also id.* app. C, amend. 759 (reason for amendment) (noting that the First, Second, and Fourth Circuits had held that departures under § 4A1.3 were considered before determining the applicable guideline range, and instead adopting the approach of the Sixth, Eighth, and Tenth Circuits).

It is thus clear that Stratton's applicable guideline range is the sentencing range determined under the career-offender guidelines in § 4B1.1(b). And because the 2011 amendment to the Sentencing Guidelines did not alter the offense level (or criminal history category) applicable to career offenders—and thus would not have the effect of lowering Stratton's applicable guideline range—a reduction in Stratton's sentence would not be consistent with the applicable policy statement.

Stratton argues, however, that to the extent the Sentencing Commission has defined the

---

provided that a court could impose "a sentence departing from the *otherwise* applicable guideline range." U.S.S.G. § 4A1.3 (1998) (emphasis added).

A 2003 amendment revised the text of § 4A1.3 and added to the application notes of § 1B1.1 a definition of the term "departure." Asserting that the new definition "appears to indicate that a § 4A1.3 downward departure is a departure from, rather than to, the 'applicable guideline range,'" *Flemming*, 617 F.3d at 266, the Third Circuit suggested that this new definition may have resolved the ambiguity regarding the meaning of "applicable guideline range," *id.* at 270. But the court could not consider the 2003 amendment in determining whether the defendant in that case was eligible for a sentence reduction, because the amendment was not retroactive and thus did not apply to the defendant, who was sentenced under an earlier edition of the Guidelines Manual. *See id.* at 267. The 2003 amendment similarly does not apply here.

"applicable guideline range" to render ineligible for a sentence reduction a defendant, like him, whose sentence was "based on" the now-amended guidelines for crack offenses, "the Sentencing Commission is effectively overruling both Congress and the Supreme Court regarding the availability of sentence modifications." (Def.'s Reply Br. at 2–3.) But the Third Circuit rejected a similar argument in *Doe*, 564 F.3d at 310 (rejecting argument that the policy statement requiring an amendment to have the effect of lowering the defendant's applicable guideline range "conflicts with the broader terms and congressional intent of § 3582(c)(2)").

As the Third Circuit has made clear, Congress imposed two separate requirements in 18 U.S.C. § 3582(c)(2), both of which must be met in order for a defendant to be eligible for a sentence reduction. *See Flemming*, 617 F.3d at 257; *Doe*, 564 F.3d at 309–10. Under § 3582(c)(2), it is not sufficient that a defendant's sentence was "based on" a sentencing range that has subsequently been lowered by the Sentencing Commission; rather, a sentence reduction must also be consistent with applicable policy statements issued by the Sentencing Commission. *See Doe*, 564 F.3d at 309–10. And Congress granted the Sentencing Commission broad authority to promulgate such policy statements in 28 U.S.C. § 994(u), which grants the Sentencing Commission "the unusual explicit power to decide whether and to what extent its amendments reducing sentences will be given retroactive effect."[7] *Braxton v. United States*, 500 U.S. 344, 348 (1991). The policy statement in § 1B1.10(a)(2), which requires that an amendment "have the effect of lowering the defendant's applicable guideline range," implements 28 U.S.C. § 994(u)

---

[7] The statute provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u).

and is binding on courts, *see Dillon*, 130 S. Ct. 2683, notwithstanding that it is "narrower" than the requirement in 18 U.S.C. § 3582(c)(2) that a sentence must have been based on a sentencing range that has subsequently been lowered by the Sentencing Commission, *see Doe*, 564 F.3d at 310–11.

The recent plurality opinion in *Freeman v. United States*, 131 S. Ct. 2685 (2011), is not to the contrary. It is true, as Stratton notes, that the plurality asserted that "§ 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Freeman*, 131 S. Ct. at 2692–93 (plurality opinion); *see also id.* at 2690 ("When a retroactive Guideline amendment is adopted, § 3582(c)(2) permits defendants sentenced based on a sentencing range that has been modified to move for a reduced sentence."); *id.* at 2695 ("Even when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief."); *id.* at 2695 (Sotomayor, J., concurring) ("I believe that if a [Rule 11(c)(1)(C)] agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission, the term of imprisonment is "based on" the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2).").

But one must be careful not to read too much into such statements given that the only question before the Court was whether the defendant satisfied the first requirement in

9

§ 3582(c)(2), that is, whether his sentence was "based on" the subsequently amended crack guidelines, where he had entered into a Rule 11(c)(1)(C) plea agreement that recommended a particular sentence. *See id.* at 2691 ("The question is whether defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced "based on" a Guidelines sentencing range, making them eligible for relief under § 3582(c)(2)").[8] Chief Justice Roberts pointed out this limitation when he noted the two requirements of § 3582(c)(2) and asserted that "[t]he lone issue here is whether petitioner . . . meets the initial prerequisite of having been sentenced to a term of imprisonment 'based on' a subsequently reduced sentencing range." *Id.* at 2701 (Roberts, C.J., dissenting). Neither the plurality nor Justice Sotomayor, in her concurrence, considered whether a reduction would be consistent with the applicable policy statement; nor did they consider the relationship between the requirement in § 3582(c)(2) that a sentence must have been based on a sentencing range that has subsequently been lowered and the requirement in the policy statement that an amendment have the effect of lowering a defendant's applicable guideline range.

Because a reduction in Stratton's sentence would not be consistent with the applicable policy statement, Stratton is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2). An appropriate order accompanies this memorandum.

---

[8] The Sixth Circuit had "held that, barring a miscarriage of justice or mutual mistake, defendants who enter into 11(c)(1)(C) agreements cannot benefit from retroactive Guideline amendments." *Freeman*, 131 S. Ct. at 2690 (plurality opinion)